Carol **LOLIE**, Administratrix of the Estate of Allan Lolie, Deceased, Plaintiff-Appellant,

v.

The **OHIO BRASS COMPANY,** Defendant-Appellee.

No. 73–1174.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1974.

Decided Aug. 13, 1974.

Richard P. Shaikewitz, Alton, Ill., for plaintiff-appellant.

Paul L. Pratt, Phillip J. Kardis, East Alton, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, STEVENS, Circuit Judge, and PERRY,* Senior District Judge.

PER CURIAM.

Plaintiff's husband, a coal miner, was fatally injured when a "power cable" fell from the roof of a mine. Defendant is a manufacturer of metal clips which were intended to hold the cable in place; they were dislodged, however, when the cable, having been struck by a heavy steel rail at a point some 439 feet from where decedent was standing, began to quiver violently. Since the clips did not prevent the cable from falling, plaintiff claimed that their design was defective and unreasonably dangerous, and defendant was strictly liable in tort. *Cf.* Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E. 2d 182 (1965). Accepting defendant's argument that the accident was entirely the result of the mine operator's negligence when unloading the steel rail, the jury returned a verdict for defendant. We affirm.

## I.

Subsequent to the accident a state mine inspector directed the mine operator to give the power cable added support by tying it with a sturdy polypropene rope every 60 feet; the operator, of course, complied with the directive. Plaintiff sought to introduce evidence of this post-occurrence change, but the district court excluded it. Her principal contention on appeal is that the exclusion constituted reversible error.

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

■ It is generally held that evidence of subsequent remedial measures is inadmissible to prove negligence or culpable conduct. *See* Rule 407 of the Proposed Rules of Federal Evidence. The primary ground for exclusion "rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Id.*, Advisory Committee Note.[1] This basis clearly has no applicability when the evidence is offered against a party, such as this defendant, which did not make the changes. Wallner v. Kitchens of Sara Lee, Inc., 419 F.2d 1028, 1032 (7th Cir. 1969); Sutkowski v. Universal Marion Corp., 5 Ill. App.3d 313, 318–319, 281 N.E.2d 749, 752–753 (1972).

■ In this case, plaintiff sought to impose strict liability on defendant for the defective design of its product. In such a case the plaintiff must establish that the "product in question has [not] lived up to the required standard of safety." Wright v. Massey-Harris, Inc., 68 Ill.App.2d 70, 79, 215 N.E.2d 465, 470 (1966). *See also* W. Prosser, Law of Torts 644 (4th ed. 1971). This, of course, requires proof that, *inter alia*: 1) the product as designed is incapable of preventing the injury complained of; 2)

there existed an alternative design which would have prevented the injury; and 3) in terms of cost, practicality and technological possibility, the alternative design was feasible. Evidence of post-occurrence change which tended to satisfy plaintiff's burden on any of these issues would, therefore, be relevant.[2] Hoppe v. Midwest Conveyor Co., 485 F.2d 1196, 1202 (8th Cir. 1973); *Sutkowski, supra,* 5 Ill.App.3d at 318–320, 281 N.E.2d at 752–753; Brown v. Quick Mix Co., 75 Wash.2d 833, 454 P.2d 205, 209–210 (1969); *see Wallner, supra,* 419 F.2d at 1032.

■ Since the proffered evidence was relevant and there existed no valid policy reason for excluding it, the evidence was admissible. However, after having considered the court's action in light of the entire record, and taking into account the scope of the trial judge's discretion in ruling on evidentiary questions, particularly when the proffer is arguably cumulative, we are persuaded that the exclusion was not reversible error.[3]

More specifically, evidence of the accident itself established that the design of defendant's clips could not prevent the power cable from falling under the circumstances which occurred in the mine.

---

1. The only other ground is that evidence of post-occurrence change is not relevant to the issue of negligence.

2 Defendant notes that, when the mine operator installed additional polypropene ropes, each clip retained the same size, shape, appearance and strength as before installation. Thus, contends defendant, the design of its product was unchanged and the evidence was irrelevant.

The primary difficulty with this argument is that it characterizes defendant's product as an individual clip. These clips, however, are manufactured, advertised and sold for the primary purpose of hanging a power cable. Because of the length and weight of this cable, a single clip is of no practical value; the clips must be purchased and used together in large quantities. Consequently, defendant's product is a *set* of clips and not simply the individual clip. This set was designed so that it alone would support a pow-

er cable. Therefore, by supplementing the set with polypropene ropes, the mine operator modified the design of defendant's product.

3. Fed.R.Civ.P. 61 provides in part:
   No error in . . . the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
   *See also* 28 U.S.C. § 2111. Plaintiff, of course, "carries the burden of showing that prejudice resulted" from the court's rulings in this case. Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 482, 87 L.Ed. 645.

Plaintiff's expert, Dr. Hornsey, also testified to this fact. Tr. 298–300. Dr. Hornsey further stated that, in his opinion,

> either the clip should have been designed so that it was capable of withstanding the energy loads of the cable falling under its own weight, or as an alternative at some periodic interval some additional holding device could have been used such as polyethylene rope.

Tr. 298.[4] Thus, on the issues of whether the design was inadequate and whether there existed an alternative design which would have prevented the accident, the evidence of post-occurrence change was cumulative.[5]

No other evidence was admitted on the issue of feasibility. Plaintiff, however, has not argued that there was any dispute at trial over the feasibility of tying sturdy rope at periodic intervals. And it is highly improbable that a jury could reasonably believe that such an alteration was too costly, impractical or technologically impossible. It has been suggested that, under these circumstances, evidence of post-occurrence changes should not even be admitted on the issue of feasibility. *See* McCormick's Handbook of the Law of Evidence 668–69 (2d ed. 1972); Rule 407 of the Proposed Rules of Federal Evidence. At the very least, exclusion of such evidence did not affect the "substantial rights" of plaintiff.

Our decision here is, of course, consistent with *Wallner, supra,* and Mahoney v. Roper-Wright Mfg. Co., 490 F.2d 229 (7th Cir. 1973). In *Wallner* we held simply that *admission* of the post-accident change evidence was proper. In *Mahoney* exclusion of such evidence was reversible error because the plaintiff also had been precluded from offering any evidence of design alternatives.

## II.

Plaintiff sought to introduce evidence of what she terms "other similar happenings." One of her witnesses, an employee of the mine operator, had worked in another coal mine for several years. During this period he had seen fellow workers intentionally take down the power cable in a manner similar to cracking a whip. As in this case, the power cable had been suspended by means of clips; when the force was applied, the clips instantaneously and progressively flew out. Plaintiff contends that exclusion of this evidence also was error.

■ We believe that the trial court's ruling was proper. Plaintiff offered no evidence that the clips used in the other mine were comparable, in terms of characteristics and quality, to those manufactured by defendant.[6] She thus failed to lay a proper foundation for the admission of the "similar happenings" evidence.[7] *See* Walker v. Trico

4. In the light of this testimony, similar opinion testimony from other witnesses would have been cumulative; its exclusion was therefore not reversible error even if the testimony could properly have been received. It should be noted, moreover, that an issue has been raised, which we need not decide, as to whether plaintiff had laid a proper foundation for admission of the other testimony of this character.

5. As this Court noted in Hutter Northern Trust v. Door County Chamber of Commerce, 467 F.2d 1075, 1080 (7th Cir. 1972), "Harmless error is often found when substantially equivalent evidence has been admitted."

6. The only evidence on this point was the witness' testimony that he did not know whether the clips used were defendant's. Tr. 145–46.

7. One of defendant's experts testified that, on at least one occasion, large pieces of rock fell from the roof of a mine onto the messenger cable (the power cable was attached, by means of the clips, to the messenger cable) without dislodging the clips. The record indicates that the clips were defendant's and that they were employed under circumstances essentially the same as those surrounding the accident in question. *See* Tr. 445–48. Consequently, a proper foundation was laid for this testimony. And since

Mfg. Co., 487 F.2d 595, 599–600 (7th Cir. 1973), cert. denied, 415 U.S. 978, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); Mahoney v. Roper-Wright Mfg. Co., 490 F. 2d 229, 233 (7th Cir. 1973); Vlahovich v. Betts Machine Co., 101 Ill.App.2d 123, 128, 242 N.E.2d 17, 19 (1968), aff'd, 45 Ill.2d 506, 260 N.E.2d 230 (1970).

Furthermore, the proffered evidence was perhaps more helpful to defendant than to plaintiff. Power cables are generally non-permanent installations which must be transported from one mine tunnel to another. The "similar happenings" evidence tended to prove that the actual consumers of defendant's product, i. e., mine operators, desired clips which allowed easy removal of the power cable. Defendant, therefore, might well have argued that this evidence supported its view that the product complied with the required standard of safety.

### III.

■ Plaintiff's contention that the trial court improperly commented upon the evidence is also without merit. During a colloquy with plaintiff's expert the court stated, at several points, that the clips would not have been dislodged if the rail (or some other heavy object) had not initially fallen upon the power cable.[8] Tr. 289–97. There was absolutely no evidence indicating that this was not the case; indeed, plaintiff's own expert agreed that, absent a force sufficiently strong to dislodge the first clip, the accident would never have occurred. Tr. 296–97. The court's comments clearly do not constitute that type of "distortion" referred to in Quercia v. United States, 289 U.S. 466, 470, 53 S. Ct. 698, 77 L.Ed. 1321.

It might also be noted that, during the trial, plaintiff made no motion to strike the court's comments; she made no objection to them, and did not, in any way, attempt to call the court's attention to their alleged impropriety. While there may be cases in which grossly improper remarks constitute plain error, cf. Webb v. Texas, 409 U.S. 95, 97, 93 S.Ct. 351, 34 L.Ed.2d 330; Myers v. George, 271 F.2d 168, 174 (8th Cir. 1959), this surely is not such a case.

### IV.

Under regulations promulgated by the Federal Bureau of Mines, a federal mine inspector may not testify as an expert witness; he is only permitted to describe facts which he observed during the course of an investigation. Nevertheless, the district court ruled that an inspector called by the defense was an expert and thus could give an opinion as to the cause of the accident. Plaintiff repeatedly expressed concern that the witness, during cross-examination, would rely upon the Bureau's regulations and refuse to give any further opinion testimony, thereby frustrating such examination. Plaintiff now contends that the district court erred in ruling that the mine inspector was an expert and in admitting his opinion testimony, and that she was denied her right to effective cross-examination.

■■ Neither the Bureau of Mines nor the mine inspector himself may have thought that he was or should be an expert. But it is the trial judge, and not the witness or an administrative agency, who has the responsibility and discretion to determine whether a witness is qualified as an expert. In this case, the witness testified that he had been in the coal industry for over 30 years, that he had been an inspector for the Bureau of Mines since 1967 and that, at the time of trial, his title was "Supervisor of Federal Coal Mine Inspection." Tr. 359. Thus, we do not believe that the trial court abused its discretion in consider-

the evidence was relevant on the issue of foreseeability, the trial court properly admitted it.

8. The court's statements were made largely to indicate the basis of his rulings sustaining objections posed by the defense. Compare Chapman v. Alton R. Co., 117 F.2d 669, 671 (7th Cir. 1941).

ing the inspector an expert on the cause of a coal mining accident; nor do we believe that admitting his opinion testimony (that the accident was caused by the rail striking the power cable) was "manifestly erroneous." [9]

■ Plaintiff's claim that she was denied effective cross-examination of the inspector is without basis in fact. The district court, at several points, informed the witness that the Bureau's regulations were not a valid reason for refusing to give opinion testimony. Tr. 360, 366, 376, 387–88. That the witness understood the court's directive and was willing to abide by it is apparent from the following testimony given during an offer of proof:

Q  If I [plaintiff's counsel] asked you a hypothetical question requiring your expertise, and if the Court directs you to answer that question, will you answer it, or will you say you have no opinion?

A  If I know what I'm talking about I would probably answer it, but I'm going to have to know what I'm talking about.

Tr. 388–89. Furthermore, at no time during cross-examination did the witness refuse to answer any of plaintiff's hypotheticals.[10]

V.

■ Plaintiff's final contention is that testimony concerning the proper method of unloading rails in railroad yards was irrelevant and, therefore, should have been excluded. We disagree. Defendant's theory was that the mine operator's employees had been negligent in unloading the rails and that this negligence was the sole proximate cause of the accident. The Illinois courts have recognized that this is a proper defense in a strict liability action. Santiago v. Package Machinery Co., 123 Ill.App.2d 305, 310–312, 260 N. E.2d 89, 92–93 (1970). And, in our opinion, evidence that it would have been improper for the mine employees to follow the same procedure above ground that they actually followed in the mine had a tendency to prove negligence and, therefore, to support the theory of the defense. Under these circumstances, we believe that the evidence was relevant [11] and that the trial court properly admitted it.

The judgment of the district court is therefore

Affirmed.

9.  As the Supreme Court has concluded:

Whether a witness is shown to be qualified or not as an expert is a preliminary question to be determined in the first place by the court; and the rule is, that if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony. Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous.

Spring Co. v. Edgar, 99 U.S. (9 Otto) 645, 658, 25 L.Ed. 487. See also Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313.

10.  With one exception all of plaintiff's hypotheticals concerned whether an alternative design of the clips would have prevented the accident. Objections to these questions were sustained by the court and, consequently, the reasons why the witness did not answer them were unrelated to the Bureau of Mines regulation. In response to the question of whether "if the power cable had not been hung up on the conveyor belt, [would] . . . these clips . . . have failed for' the additional distance of half a mile to a mile and all of the power cable come down?" the witness replied simply: "I have no opinion on that. I have no way of knowing. I can't make an opinion on that. I have no way of knowing, your Honor." Tr. 385.

11.  Rule 401 of the Proposed Rules of Federal Evidence provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.