[No. 44163. En Banc. January 12, 1978.]

RONALD HAYSOM, ET AL, *Appellants,* v. COLEMAN LANTERN COMPANY, INC., ET AL, *Respondents.*

*Sullivan, Morrow & Longfelder, Kerry D. Kidman,* and *Albert Morrow,* for appellants.

*Lee, Smart, Cook, Dunlap & Biehl, P.S., Inc., John F. Biehl, Nelson T. Lee,* and *David L. Martin,* for respondents.

UTTER, J.—Ronald and Gay Haysom appeal from a judgment entered upon a jury verdict in favor of the respondents, Coleman Lantern Company, Pay'N Save Corporation, and Wigwam Stores, Inc., in a products liability case. They assign error to the failure of the trial court to enter a directed verdict against the respondent Coleman, asserting that Coleman's failure to provide sufficient warnings to consumers of the inherent dangers in its product rendered it defective as a matter of law. Appellants also assign error to the refusal of the trial court to give an instruction concerning the Federal Hazardous Substances Act as well as three evidentiary rulings, including the refusal to admit into evidence post–injury labeling changes made by the Coleman Company. We conclude that the trial court's rulings with regard to each of these matters were correct, and affirm.

This case arises as a result of serious injuries suffered by Gay Haysom in a fire which erupted while she was engaged in filling the fuel tank of a Coleman camp stove in the kitchen area of her mobile home on March 26, 1971. The stove in question was purchased by the appellants in 1966 and had been used by both of the Haysoms on numerous occasions without incident prior to the accident here at issue. Mrs. Haysom stated in interrogatories prior to trial that she had lit and filled the stove herself on several occasions. At trial, she admitted having lit the stove and used it, but denied having filled it with fuel herself prior to the date of the accident.

The Coleman stove burns a petroleum product commonly referred to as "white gas," which is delivered to a burner in a vaporized state by means of a generator tube assembly from a fuel tank attached to the stove body. The Coleman Company distributes a form of this fuel, but it is also readily available from other sources. The record does not establish whether the fuel used by Mrs. Haysom on the day of the accident was stored in a can manufactured by the respondent; however, it is clear that Mrs. Haysom had purchased Coleman fuel in the past and was familiar with the

warnings and cautions set forth on containers manufactured by the respondent. In addition, she testified to being well aware of the propensities of Coleman fuel.

On the day of the accident there apparently was a power outage in the area of the Haysom home. Mrs. Haysom, having determined to use the Coleman stove to heat her house, went to a nearby storage shed, found the stove, took it inside and placed it on the kitchen counter in the vicinity of the propane range. She then pumped the stove several times and lit the master burner. It remained on for a few moments, then flickered and apparently died out. Believing the stove to be out of fuel, she removed the fuel tank and the connected generator tube assembly from the stove, pulling it back several inches from its connection with the burner so as to leave the generator tube assembly resting within the front panel of the stove. She then went to the shed to obtain additional fuel. While still outside the trailer she transferred some of the stove fuel from its container to a small plastic freezer container. She then returned to the kitchen, unscrewed the fuel tank cap and began to pour fuel from this container into the stove tank. Almost immediately a fire erupted and the appellant was engulfed in flames. As a result of injuries sustained in the fire, she was severely disfigured, suffered loss of movement in portions of her body and other serious injuries.

Appellants sought to prove the fire was a result of one of several asserted defects in the stove, including: design defects resulting in "lingering flames" at various points on the stove after the burners had been shut off; inadequate warnings of the dangers incident to the use of the stove (and, in particular, those dangers associated with lingering flames); and misleading or inaccurate instructions for use. During the course of a 6–week trial, conflicting expert testimony was presented as to both the possible circumstances and location in which lingering flames might occur during use of the stove. Conflicting testimony was also presented as to the adequacy of warnings and instructions set forth on

the stove and the accompanying instruction brochure, and the probable source of ignition of the fire.

Following the presentation of evidence, the trial court denied appellants' motion for a directed verdict. The jury then returned a verdict, pursuant to written interrogatories, declaring the stove to be not defective. In accordance with instructions accompanying the interrogatories, the jury did not consider such additional issues as proximate cause, damages, or the existence of other defenses. Thereafter the trial court denied appellants' motion for a judgment notwithstanding the verdict or new trial, and granted judgment for the respondents.

At no point in the voluminous record of the proceedings in this case is the precise source of ignition of the fire established. In the absence of a clearly established source of ignition, the question of proximate cause was for the jury. The form of the interrogatories presented prevented the jury from reaching this issue. We address only legal issues relating to the initial question of defects in the product on this appeal.

I

Did the trial court err in refusing to declare the stove defective as a matter of law due to the alleged failure of the Coleman Company to adequately warn the user of dangers associated with it? Washington has for many years recognized the common-law negligence principle that a manufacturer is under a duty to warn consumers of hazards associated with the use of potentially dangerous products. *Foster v. Ford Motor Co.*, 139 Wash. 341, 246 P. 945, 48 A.L.R. 934 (1926); *Dalton v. Pioneer Sand & Gravel Co.*, 37 Wn.2d 946, 227 P.2d 173 (1951). The doctrine of strict liability as set forth in the Restatement (Second) of Torts § 402A (1965) has been expressly adopted by this court. *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969); *Seattle-First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 542 P.2d 774 (1975). It provides that a product may be deemed "defective" and a manufacturer incur liability for

failure to adequately warn of dangerous propensities of a product which it places in the stream of commerce. Restatement (Second) of Torts § 402A, comments *j* and *k*. These Restatement provisions with regard to warnings have been adopted in this state. *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 570 P.2d 438 (1977); *Haugen v. Minnesota Mining & Mfg. Co.*, 15 Wn. App. 379, 388, 550 P.2d 71 (1976). *Haugen,* at page 388, states the rule to be:

> [A] manufacturer may be held strictly liable if a plaintiff establishes that a product is unreasonably dangerous, though faultlessly manufactured, when placed in the hands of a user without giving suitable and adequate warnings or instructions concerning the safe manner in which to use it.

It is, however, equally well recognized that a warning need not be given at all in instances where a danger is obvious or known. *Shuput v. Heublein, Inc.*, 511 F.2d 1104 (10th Cir. 1975); *Jackson v. Coast Paint & Lacquer Co.*, 499 F.2d 809 (9th Cir. 1974); *Nelson v. Brunswick Corp.*, 503 F.2d 376 (9th Cir. 1974); *Rindlisbaker v. Wilson,* 95 Idaho 752, 519 P.2d 421 (1974); *Atkins v. Arlans Dep't Store of Norman, Inc.*, 522 P.2d 1020 (Okla. 1974); *Ewer v. Goodyear Tire & Rubber Co.*, 4 Wn. App. 152, 480 P.2d 260 (1971). *See* Restatement (Second) of Torts § 402A, comment *j*. Those cases in which this court or the courts of other jurisdictions have held products to be defective *as a matter of law* on the basis of inadequate warnings or labeling have almost uniformly involved dangers which were clearly latent and therefore presented no issue as to the danger being obvious or known. *See, e.g., Kritser v. Beech Aircraft Corp.*, 479 F.2d 1089 (5th Cir. 1973) (malfunction of aircraft fuel tank); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968) (polio vaccine); *Teagle v. Fischer & Porter Co., supra* (capacity of flow gauge); *Tucson Indus., Inc. v. Schwartz,* 108 Ariz. 464, 501 P.2d 936 (1972) (fumes which cause blindness).

Where, as here, the dangers associated with the use of a product cannot be said to be clearly latent, both the question of whether instructions or warnings are adequate to insure safe use of a product, as well as that of whether the dangers involved are so obvious or well known as to eliminate the necessity for detailed warnings, are for the trier of fact.

> Virtually any tool on the market today, including the ordinary screwdriver or hammer, may be dangerous to the ultimate user if used in an improper manner or for an unintended use. It is for the jury to determine whether the danger so presented is unreasonable in the absence of some warning or instruction by the manufacturer concerning safety precautions which should be taken to prevent injury.

*Haugen v. Minnesota Mining & Mfg. Co., supra* at 389. *See Ewer v. Goodyear Tire & Rubber Co., supra; Bituminous Cas. Corp. v. Black & Decker Mfg. Co.,* 518 S.W.2d 868 (Tex. Civ. App. 1974); *Krugh v. Miehle Co.,* 503 F.2d 121 (6th Cir. 1974); *Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076 (5th Cir. 1973); *Phillips v. Kimwood Mach. Co.,* 269 Ore. 485, 525 P.2d 1033 (1974); *Jackson v. Coast Paint & Lacquer Co., supra;* Noel, *Products Defective Because of Inadequate Directions or Warnings,* 23 Sw. L.J. 256, 283 (1969). While at least one court has taken the position that the existence of a duty to warn is a pure question of law, *Genaust v. Illinois Power Co.,* 62 Ill. 2d 456, 343 N.E.2d 465 (1976), this is a view which we do not adopt.

In view of the nature of the product in question and the dangers associated with it, coupled with the conflicting lay and expert testimony as to the adequacy of instructions and warnings accompanying it, the trial court did not err in refusing to treat the issue of the existence of a defect in the stove as a question of law.

Appellants have also argued, relying upon *McCully v. Fuller Brush Co.,* 68 Wn.2d 675, 415 P.2d 7 (1966), that warnings must be distinguished from instructions for use

and instructions for use which do not warn of the dangers of minor deviations from them are inadequate as a matter of law. We adhere to the pronouncements of the *McCully* decision but conclude it to be inapplicable to the case at bar. While we there held that "instructions" do not constitute warnings sufficient to raise an issue as to contributory negligence on the part of a user where the consequences of a minor deviation from them are not clearly set forth, we did so in the context of dangers that were clearly latent and, in addition, were directly inconsistent with representations on the label of the product at issue as to its safety. *McCully v. Fuller Brush Co., supra* at 678–79. Placing reliance upon this holding is inappropriate in a situation such as that before us here where the potential danger of a failure to follow directions is at least arguably commonly known or obvious.

The jury was adequately instructed on this issue and, indeed, no error has been assigned to those instructions. The trial judge ruled correctly in refusing to hold for the appellants on this issue, as a matter of law.

## II

Did the trial court improperly refuse to give a proposed instruction relating to the adequacy of labeling of Coleman fuel containers under the Federal Hazardous Substances Act, 15 U.S.C. § 1261 *et seq.*? The record indicates the trial judge declined to give this instruction because he believed the labeling standards contained in the act did not apply to the stove, but to the fuel can, which was sold as a separate unit and was not pertinent to the question of the adequacy of warnings on the stove itself. We agree with the trial court's interpretation of both the statute and the appellants' theory of liability. Appellants' theory of the case as outlined in instruction No. 5, to which no error has been assigned, concerns the condition of the stove alone. The jury was not instructed to consider the "product" in question as including both the stove and a fuel can. The trial court need not instruct the jury on matters not supported

by the evidence or inapplicable to the issues presented. *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 397 P.2d 857 (1964); *McGarvey v. Seattle,* 62 Wn.2d 524, 384 P.2d 127 (1963).

## III

Did the trial court improperly refuse admission into evidence of post–accident changes in the Coleman stove brochure and the instructions set forth on the stove lid? Appellants argue for reversal of the judgment for failure to admit this evidence on four separate grounds, each of which was considered and rejected by the trial court.

### (a)

They first contend the traditional rule in negligence cases, barring the admissibility of post–accident safety precautions or changes in a product to show negligence, should not be extended to cases tried on a theory of strict liability.[1] A number of courts and commentators have recently questioned or rejected the use of the negligence rule in a strict liability setting. *See Shaffer v. Honeywell, Inc.,* ___ S.D. ___, 249 N.W.2d 251 (1976); *Barry v. Manglass,* 55 App. Div. 2d 1, 389 N.Y.S.2d 870 (1976); *Ault v. International Harvester Co.,* 13 Cal. 3d 113, 528 P.2d 1148, 117 Cal. Rptr. 812 (1974); Note, *Products Liability and Evidence of Subsequent Repairs,* Duke L.J. 837 (1972); Schwartz, *The Exclusionary Rule on Subsequent Repairs—A Rule in Need of Repair,* 7 The Forum 1, 6 (1972).

The traditional reasons for excluding such evidence fall into two categories: relevance—post–accident changes are not relevant to the alleged tort–feasor's objective conduct and perceptions prior to the accident, but rather to his subjective beliefs, which are not pertinent to the question of negligence, *Bartlett v. Hantover,* 84 Wn.2d 426, 526 P.2d

---

[1]The Washington cases recognizing this well–established rule of evidence and its exceptions are cited and discussed in 5 R. Meisenholder, Wash. Prac. § 10 (1965).

1217 (1974), and policy—the traditional rule is intended to encourage repair of potentially unsafe conditions. *See Ault v. International Harvester Co., supra;* 5 R. Meisenholder, Wash. Prac. § 10.

█ The policy justification for the rule of exclusion appears to have little force in the context of the typical products liability action. Those who urge departure from the traditional rule all argue it is implausible to assume a manufacturer would risk liability in numerous future cases, as well as potential loss of customer goodwill, by failing to alter a defective product because such alterations might be admissible against it in a single action. The particular relevance argument put forth in *Bartlett* is not applicable in the strict liability setting; however, a parallel relevance problem, which was recognized by the trial court here, does exist. A subsequent change in design or instructions often may be implemented to improve a product for reasons other than to cure a dangerous defect. The problem of weighing the relevance of a particular change against the prejudicial impact of such evidence upon the defendant, even if only marginally relevant, makes adoption of a rule of universal admissibility of post–injury changes to prove prior defect inappropriate and we decline to adopt it.[2]

The fundamental problem involved in this area is one of weighing the relevance of a subsequent change against potential prejudice in a given factual setting. The issue here presented, the adequacy of warning and instructions set forth on a camp stove to render that product safe for use by

---

[2]A number of recent cases have treated this question in the same manner as was traditionally utilized in negligence cases, allowing admission of subsequent changes in design only under established exceptions to the general rule of exclusion, such as instances in which feasibility is at issue or to impeach testimony or establish dominion and control. *See, e.g., Lolie v. Ohio Brass Co.,* 502 F.2d 741 (7th Cir. 1974); *Hoppe v. Midwest Conveyor Co.,* 485 F.2d 1196, 1202 n.3 (8th Cir. 1973); *LaMonica v. Outboard Marine Corp.,* 48 Ohio App. 2d 43, 355 N.E.2d 533 (1976); *Smith v. E.R. Squibb & Sons, Inc.,* 69 Mich. App. 375, 245 N.W.2d 52 (1976) (holding inadequacy of warnings to be essentially a negligence concept); *Cunningham v. Yazoo Mfg. Co.,* 39 Ill. App. 3d 498, 350 N.E.2d 514 (1976); *Price v. Buckingham Mfg. Co.,* 110 N.J. Super. 462, 266 A.2d 140 (1970).

ordinary consumers, is one which a jury could readily determine without the necessity to consider changes in those instructions, made for perhaps several purposes, some 10 years after the product at issue was manufactured. Certainly instances can be hypothesized in which the relevance of a subsequent change to the question of prior defect would so outweigh any prejudice as to make the admission of such evidence entirely appropriate. *Cf. Barry v. Manglass, supra; Shaffer v. Honeywell, Inc., supra.* The variety of factual situations in which this issue might arise is an argument for vesting the trial judge with discretion to allow such evidence in instances where relevance outweighs prejudice. Appellants have not argued for a rule allowing the trial court to exercise such discretion, however, and we do not reach the question of the right of the trial court to exercise such discretion here.

Appellants next argue this evidence should have been admitted on the basis of any one of three established exceptions to the existing rule employed in negligence cases, asserting it was relevant to show feasibility, to impeach, and that respondents "opened the door" to such testimony through their own examination of witnesses.

### (b)

Respondents stipulated in their trial brief to the feasibility of putting additional warnings on the stove (presumably for the purpose of precluding testimony as to subsequent changes on this basis), *see Bartlett v. Hantover, supra;* however, they then went on to both argue and present testimony to the effect that more detailed warnings would not be an effective labeling technique and that attaching the contents of the brochure to the stove would not be practical. While this testimony may arguably have been directed to the feasibility of change, it was also directed toward the adequacy of existing warnings. In such a situation it has been held to be within the trial court's discretion to allow evidence of subsequent changes. *doCanto v. Ametek, Inc.,* 367 Mass. 776, 328 N.E.2d 873 (1975). However, given that

the testimony at issue cannot be said to have been limited solely to the question of feasibility, we cannot say the trial court abused its discretion in refusing to admit it on this ground. *See Boeing Airplane Co. v. Brown,* 291 F.2d 310, 315 n.3 (9th Cir. 1961); *Lolie v. Ohio Brass Co.,* 502 F.2d 741 (7th Cir. 1974).

(c)

Appellants also contend this evidence was admissible to impeach prior testimony concerning the adequacy of the old labels and instructions, presumably on the basis that the change of labels was at least some evidence the Coleman Company actually felt its prior labels to be defective. A general exception has been recognized for this sort of evidence where it is admitted for the limited purpose of attacking credibility. *See* Annot., 64 A.L.R.2d 1296 (1959). The trial court felt the existence of new labels did not directly contradict the assertion by respondents' witnesses that the prior labels were adequate. Contradictory evidence which is both somewhat relevant to the credibility of a witness and also highly prejudicial may be excluded by the trial court. *State v. Putzell,* 40 Wn.2d 174, 242 P.2d 180 (1952); *see* 5 R. Meisenholder, Wash. Prac. § 304. A ruling excluding such evidence should not be overturned in the absence of a showing of abuse of discretion. *Good v. West Seattle Gen. Hosp. Corp.,* 53 Wn.2d 617, 335 P.2d 590 (1959); *Roper v. Mabry,* 15 Wn. App. 819, 551 P.2d 1381 (1976). We find no abuse of discretion here.

(d)

Appellants finally argue that respondents opened the door to this evidence, even if otherwise inadmissible, through their own questioning of witnesses, which allegedly ventured into an impermissible area. We have generally treated the resort to otherwise inadmissible evidence to refute testimony of an adverse witness in such circumstances to be a matter of right, *Warren v. Hart,* 71 Wn.2d

512, 429 P.2d 873 (1967); *Ott v. Press Pub. Co.*, 40 Wash. 308, 82 P. 403 (1905), subject to the trial court's inherent power to limit the contradictory evidence based upon the pertinence of testimony to the evidence which "opened the door" and the significance of the matters involved. *State v. Robinson*, 61 Wn.2d 107, 377 P.2d 248 (1962). The trial court initially ruled evidence of the contents of the 1975 brochure to be immaterial (but did not direct the jury to disregard it) after appellants had read into the record an answer given by an adverse witness in a pretrial deposition for the purpose of impeaching that witness on a different matter. The answer indicated changes had been made in the cautions and warnings on a brochure produced in 1975. Respondents then later asked what, if any, changes had been made in the "words of instruction" since the brochure which accompanied the appellants' stove had been produced. Respondents contend the phrase "words of instruction" was chosen with care and does not open the door to discussion of changes in warnings or consequences or attendant risks associated with the stove, relying upon language in *McCully v. Fuller Brush Co.*, 68 Wn.2d 675, 415 P.2d 7 (1966), to the effect that "instructions" and warnings of the consequences of the failure to follow them are different things.

The trial judge allowed the answer to the general question read from the deposition to stand without a limiting instruction. He also allowed the respondents to point out that no relevant changes had been made in "words of instruction" and then halted discussion of the 1975 brochure. In so doing, the trial judge properly acted to limit the presentation of evidence to the jury which he had previously determined to be inadmissible. Even if it could be said the appellant had the right to investigate this matter further before the jury, the error has not been shown to be so prejudicial as to require reversal.

## IV

Appellants' next assignment of error concerns the

refusal of the trial court to admit evidence of the labeling practices of Sears, Roebuck and Company, which markets Coleman stoves under its own name. Appellants assert this evidence was relevant to show Coleman's labeling techniques were not in conformance with the standards of others in the industry. The cases upon which the appellants seek to rely all recognize that, while evidence of a general industry standard or custom is relevant to show negligence (or in this case defective labeling), evidence of the practices of a single other business or person is inadmissible. *Meyers v. Meyers*, 81 Wn.2d 533, 538 n.3, 503 P.2d 59, 59 A.L.R.3d 1318 (1972); *Swartley v. Seattle School Dist. 1*, 70 Wn.2d 17, 421 P.2d 1009 (1966). *See also Miller v. Staton*, 58 Wn.2d 879, 365 P.2d 333 (1961). The New Jersey case cited, *Price v. Buckingham Mfg. Co.*, 110 N.J. Super. 462, 266 A.2d 140 (1970), also involved evidence of the practice of "other large users" rather than a single entity. This assignment of error is without merit.

## V

■ Finally, appellants contend the trial court erred in refusing to admit into evidence the provisions of the "National Fire Codes" promulgated by the National Fire Protection Association which set forth standards pertinent to the use of gasoline and gasoline fired camp stoves. These standards were not admitted by the trial court because they dealt with preventing fires in forested areas, rather than the specific type of accident here involved. In addition, the text of the code indicates the material sought to be introduced constituted "advisory recommendations" rather than technical standards. In view of the serious questions as to trustworthiness and relevancy which are raised by the language of the proffered materials themselves, we decline to hold the trial court erred in refusing to admit them. *See*

*Nordstrom v. White Metal Rolling & Stamping Corp.,* 75 Wn.2d 629, 453 P.2d 619 (1969).

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Petition for rehearing denied May 30, 1978.