33 F.3d 397
 40 Fed. R. Evid. Serv. 799
 TLT-BABCOCK, INCORPORATED, to its own use and to the use of
Underwriters at Lloyd's and British Companies,
Plaintiff-Appellant,
v.
EMERSON ELECTRIC CO., d/b/a Browning Manufacturing;
Emergency Maintenance & Repair Company, Defendants-Appellees,
and
Howard Rubenstein, Trustee, Defendant,
v.
GENERAL ELECTRIC COMPANY; Mayor and City Council of
Baltimore; Pennsylvania Crusher Corporation,
Third Party Defendants.
TLT-BABCOCK, INCORPORATED, to its own use and to the use of
Underwriters at Lloyd's and British Companies,
Plaintiff-Appellee,
v.
EMERSON ELECTRIC CO., d/b/a Browning Manufacturing,
Defendant-Appellant,
and
Emergency Maintenance & Repair Company; Howard Rubenstein,
Trustee, Defendants,
v.
PENNSYLVANIA CRUSHER CORPORATION, Third Party Defendant-Appellee,
and
General Electric Company; Mayor and City Council of
Baltimore, Third Party Defendants.
 Nos. 93-1693, 93-1758.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 8, 1994.
Decided Aug. 31, 1994.
 
 ARGUED: Lee Thomas Ellis, Jr., Baker & Hostetler, College Park, MD, for appellants. James Allan Rothschild, Anderson, Coe & King, Baltimore, MD, for appellee Emerson Elec., Joel D. Newport, Semmes, Bowen & Semmes, Towson, MD, for appellee Emergency Maintenance; Angus Robert Everton, Mason, Ketterman & Morgan, Baltimore, MD, for appellee Pennsylvania Crusher. ON BRIEF: Ralph G. Blasey, III, Baker & Hostetler, College Park, MD, for appellants. Constance D. Burton, Anderson, Coe & King, Baltimore, MD, for appellee Emerson Elec.; Daniel J. Moore, Semmes, Bowen & Semmes, Towson, MD, for appellee Emergency Maintenance; Alan M. Carlo, Diane S. Deros, Mason, Ketterman & Morgan, Baltimore, MD, for appellee Pennsylvania Crusher.
 Before RUSSELL and MICHAEL, Circuit Judges, and JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 Affirmed by published opinion. Judge RUSSELL wrote the opinion, in which Judge MICHAEL and Judge JACKSON, joined.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 TLT-Babcock, Inc. ("TLT") appeals from the judgment of the district court granting partial summary judgment in favor of defendant Emergency Maintenance & Repair Company ("EMARCO") and from various evidentiary rulings rendered by the district court in favor of defendant Emerson Electric Company ("Emerson"). We find no merit in TLT's assignments of error and accordingly affirm the decisions of the district court.
 
 I.
 
 2
 In the late 1970's, the Mayor and the City Council of Baltimore, Maryland (collectively referred to as the "City") undertook to construct a tunnel under the Baltimore Harbor that would be part of Interstate 95. Part of the tunnel included a large ventilation system to supply fresh air to the tunnel.
 
 
 3
 The City awarded a general contract to TLT for construction and installation of the tunnel ventilation system, which was to consist of forty-eight fans.[1] TLT subsequently entered into subcontracts with various parties to supply component parts and labor. Three of these subcontractors are relevant to the instant appeal: 1) Tri-Power, a distributor of Browning Manufacturing ("Browning"), a division of Emerson, which designed and supplied the belt-driven power transmission drives; 2) EMARCO, which erected and installed the ventilation system; and 3) Pennsylvania Crusher Corporation ("Crusher"), which manufactured the shafts for the fans according to TLT's design.
 
 
 4
 EMARCO began installation of the ventilation system in 1985. A crucial component of installation was "tensioning" the fan belts. Pursuant to TLT's directive in the blueprints to "tension per manufacturer's recommended procedures," EMARCO spoke with a Browning representative regarding proper belt tension levels. Browning provided EMARCO with "tension checkers" and referred EMARCO to tension values set out in a Browning catalogue.
 
 
 5
 After EMARCO installed the fans, the City inspectors became concerned about problems with the fan belts. TLT requested that Emerson examine the fan transmissions at the tunnel site. In July 1985 and again in October 1985, Emerson personnel visited the tunnel and concluded that a lack of tension on the belts was the likely problem. EMARCO, pursuant to Emerson's instructions, increased the tension on the belts. On the weekend before Thanksgiving 1985, the opening night of the tunnel, the first fan shaft failure occurred. In all, twenty fan shafts failed in 1985, causing over one million dollars in damages.[2]
 
 
 6
 TLT filed separate suits in federal district court against Emerson and EMARCO, alleging state law claims for breach of contract, breach of express warranty, and negligence.[3] Emerson filed a third-party complaint against Crusher, the City, and General Electric Company, but subsequently dismissed its claims against the City and General Electric Company.
 
 
 7
 At the conclusion of discovery, Emerson, EMARCO, and Crusher moved for summary judgment. Emerson's motion was denied and Crusher's motion was granted in its entirety. EMARCO's motion was granted in its entirety with the exception of that part of TLT's contract claim pertaining to the installation of the ventilation system's motors.
 
 
 8
 After five days of trial, TLT failed to introduce any evidence to prove the residue of its contract claim against EMARCO. EMARCO accordingly asked the district court to enter judgment against it for nominal damages in the amount of one dollar. The district court granted the request and directed entry of judgment in favor of TLT; EMARCO was subsequently excused from the trial and the case proceeded against Emerson. Emerson ultimately prevailed, as the jury found in its favor on all counts. TLT appeals.
 
 II.
 
 9
 In its case against Emerson, TLT argued to the jury that Emerson's alleged "overtensioning" of the fan belts caused the fan shafts to break. Emerson countered that the fan shaft failures were caused by TLT's defective design of the shafts. TLT objects to four evidentiary rulings made by the district court during the trial; we will address them in turn.[4]
 
 
 10
 First, TLT argues that the district court erred in admitting evidence of TLT's fan shaft design. According to TLT, Emerson should have been bound by the City's final acceptance of the fan shafts as designed by TLT and, therefore, the district court should not have allowed Emerson to raise the issue of the shaft design to defeat TLT's claim. In essence, TLT's argument amounts to no more than an attempt to define the parameters of Emerson's defense. Because TLT points to no legal authority, and we know of none, that justifies keeping out this relevant evidence, we find that the district court acted within its discretion when it allowed Emerson to introduce at trial evidence of TLT's shaft design.[5]
 
 
 11
 Second, TLT argues that the district court erred when it allowed Emerson to introduce evidence that, in 1992, the Maryland Transit Authority had the fan shafts redesigned with a larger diameter. TLT contends that this evidence of new fan shaft design constitutes a subsequent remedial measure and is accordingly inadmissible pursuant to Federal Rule of Evidence 407.[6]
 
 
 12
 Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them. Fed.R.Evid. 407 advisory committee's note. A nondefendant, however, will not be inhibited from taking remedial measures if such actions are allowed into evidence against a defendant. The courts of appeals, therefore, have held that evidence of subsequent repairs may be admitted where those repairs have been performed by someone other than the defendant. E.g., Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 888 (9th Cir.1991); O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir.1990); Dixon v. Int'l Harvester Co., 754 F.2d 573, 583 (5th Cir.1985); Lolie v. Ohio Brass Co., 502 F.2d 741, 744 (7th Cir.1974) (per curiam); Steele v. Wiedemann Machine Co., 280 F.2d 380, 382 (3d Cir.1960); see also 10 James Wm. Moore & Helen I. Bendix, Moore's Federal Practice Sec. 407.05 (2d ed.1994). We agree with the logic and conclusion of our sister circuits.
 
 
 13
 In the case at bar, the remedial measures were not taken by defendant Emerson but rather were initiated by a third party, the Maryland Transit Authority. Under our reading of Rule 407, we conclude that the district court correctly admitted the disputed evidence.[7]
 
 
 14
 Third, TLT argues that the district court erred when it refused to allow TLT to elicit lay opinion testimony from Kenneth Merrill, the City's project manager, regarding his opinion as to what caused the fan shafts to fail.[8] We disagree with this argument. One prerequisite of admissibility of lay opinion testimony, pursuant to Federal Rule of Evidence 701(a), is that the testimony be "based on the perception of the witness." Here, Merrill performed his job as project manager based upon the reports he received from his staff, whom Merrill testified were his "eyes and ears in the field." Merrill's proposed testimony, therefore, could not have been based on his own perceptions and, accordingly, was properly excluded by the district court.[9]
 
 
 15
 Finally, TLT contends that it was error for the district court to exclude a memorandum written by Merrill regarding TLT's December 19, 1985 meeting with the City to discuss the cause of the fan shaft failures. In this memorandum, Merrill indicates that TLT told the City that overtensioning of the fan belts was causing the fan shaft failures.
 
 
 16
 We find that the district properly excluded Merrill's memorandum because it constitutes hearsay; the written words of the document constitute hearsay as do the statements of TLT, through its representatives, summarized in the document. Although the document itself may be admissible under the business records exception to the hearsay rule, Fed.R.Evid. 803(6), TLT has failed to point to any hearsay exception under which the statements by TLT's representatives should have been admitted.[10]
 
 III.
 
 17
 In addition to contesting several of the district court's evidentiary rulings, TLT also contests the propriety of the court's granting of partial summary judgment in favor of EMARCO. We have reviewed the various arguments raised by TLT with respect to this assignment of error and find them to be without merit. We accordingly affirm that portion of the district court's opinion granting summary judgment to EMARCO, TLT-Babcock, Inc. v. Emerson Elec. Co., No. WN-88-2183 (D.Md. Jan. 9, 1992).
 
 IV.
 
 18
 For the foregoing reasons, we find no merit in TLT's assignments of error. The decisions of the district court are accordingly
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Each fan is comprised of: 1) two motors; 2) several sheaves or pulleys attached to the motors; 3) belts which connect the two motors and connect one of the motors to the fan shaft; and 4) a fan shaft which rotates the fan blades. A housing encases each fan
 
 
 [2]
 Eventually, tension on the fan belts was decreased to half of the minimum value set out in the Browning catalogue. The fan shafts, however, continued to break. In 1992, the Maryland Transportation Authority, which had taken over the administration of the tunnel from the City, had the fan shafts redesigned with a larger diameter. The record discloses that none of the newly designed fan shafts has broken
 
 
 [3]
 The district court subsequently consolidated the two actions
 
 
 [4]
 We review a district court's evidentiary rulings only for abuse of discretion. E.g., United States v. Fernandez, 913 F.2d 148, 154-55 (4th Cir.1990)
 
 
 [5]
 TLT also contends that the district court violated the parol evidence rule when it admitted into evidence preliminary design calculations created by TLT prior to the execution of its July 1984 contract with Emerson. We disagree. The parol evidence rule applies only where evidence is introduced to vary or contradict the terms of an agreement. Here, Emerson's purpose in introducing the disputed evidence was not to vary or contradict the terms of its contract with TLT, but rather to show that TLT had originally designed the fan shafts with a larger diameter. We accordingly reject this assignment of error
 
 
 [6]
 Federal Rule of Evidence 407 provides:
 When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.
 
 
 [7]
 TLT also contends that the evidence of the revised shaft design was irrelevant. We disagree. The disputed evidence is relevant to the issue of causation because it shows that the new, larger shafts withstand the loads placed upon them while the shafts that TLT designed continue to break, even at reduced belt tensions
 
 
 [8]
 TLT also contends that it was error for the district court to exclude the lay testimony of Frank Underwood, TLT's engineering project manager, regarding the cause of the fan shaft failures. Even assuming the exclusion of this testimony was error, it was harmless. Underwood was permitted to testify regarding all facts that he personally observed during his investigation of the fan shaft failures; only his opinion regarding causation was excluded. Moreover, TLT's expert witness, Dr. Karvelis, was allowed to render his opinion regarding the cause of the fan shaft failures. TLT's theory that overtensioning caused the fan shaft failures, therefore, was still presented to the jury
 
 
 [9]
 TLT contends, however, that Merrill should have been allowed to testify regarding the cause of the fan shaft failures despite the fact that he derived his knowledge concerning the fan shafts from his staff. In support of this proposition, TLT cites Smith v. Town of Clarkton, N.C., 682 F.2d 1055, 1064 (4th Cir.1982). Town of Clarkton, however, does not purport to address Federal Rule of Evidence 701 and is therefore inapplicable to the case at bar
 
 
 [10]
 TLT also contends that the district court erred when it refused to allow it to introduce into evidence a personal diary kept by EMARCO's superintendent in which he kept a daily log of events at the tunnel. Even if the district court's decision was error, it was harmless because the court allowed the text of the relevant log entries to be read to the jury