[No. 38128.   Department One.   June 2, 1966.]

HAROLD MCCULLY et al., Appellants, v. FULLER BRUSH COMPANY, Respondent.*

*Reported in 415 P.2d 7.

*Peterson, Taylor & Day*, for appellants.

*Reese & Mitchell*, for respondent.

BARNETT, J.†—This is a products liability case in which an appeal is taken from a judgment entered upon a verdict in favor of the defendant.

In August or September of 1961, plaintiff Eva McCully, a resident of Walla Walla, purchased a container of Fuller All Purpose Cleaner from a sales representative of defendant Fuller Brush Company. On the label of this container was printed the following:

It's Kind To Your Hands
FULLER ALL PURPOSE CLEANER
For Painted Walls and Woodwork,
Dishes, Laundry and General
Housework

To MAKE A GALLON OF CLEANING SOLUTION, simply dissolve one to two tablespoonfuls of FULLER ALL PURPOSE CLEANER in a gallon of hot water. (If smaller quantity of solution is desired, use one or two scant teaspoonfuls to a quart of hot water.) This solution is ideal for PAINTED WALLS AND WOODWORK, VENETIAN BLINDS, WASHABLE CEILINGS, PORCELAIN, THE WINDOWS, REFRIGERATORS AND STOVES. With a soft clean cloth, wrung out in ALL PURPOSE CLEANER solution until nearly dry, simply wipe the dirt away. When washing windows, rinse glass with cloth wrung out in clear water, then wipe dry. ALL PURPOSE CLEANER used in this proportion for dishwashing, makes glassware and crystalware sparkle.

ALWAYS MOP UP ANY DRIPPINGS OF ALL PURPOSE CLEANER SOLUTION FROM WALLS AND FLOOR.

Laundry

Use two to four tablespoonfuls to a tubful of clothes and then half the usual amount of soap. ALL PURPOSE CLEANER softens the water, loosens the dirt.

Net Weight 5 lbs.                    Made in U.S.A.
The Fuller Brush Company
East Hartford, Conn.

The evidence shows that the product contained the following ingredients: sodium sesquicarbonate; sodium

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

carbonate; tetrasodium pyrophosphate; and dodecylbenzene sodium sulfonate. There is also undisputed evidence that several of these components are well known irritants and sensitizers to the human skin.

On October 12, 1961, Mrs. McCully (referred to herein as if she were the sole plaintiff) for the first time, made use of the product to do extensive household cleaning. She used the cleaner continuously for approximately 4½ hours, diluting it with a quantity of water and immersing her bare hands into the solution. By the following morning, her hands had become red, burning and blistered. After visiting a local physician, plaintiff in November of 1961, traveled to Seattle for treatment from Dr. Michael Scott, a dermatologist, who diagnosed her affliction as eczematoid dermatitis. Dr. Scott prescribed a course of treatment consisting of oral medication, the application of ointments, the use of special soap and cotton-lined rubber gloves, and exposure to light rays. Some of this treatment continued up to the time of trial in October of 1964. There is evidence that her condition may be permanent.

Plaintiff's complaint alleged a breach of implied warranty of fitness for use; a breach of express warranty; and that defendant knew or reasonably should have known that the product was harmful after prolonged contact with the skin.

By an amended answer, defendant denied the allegations of the complaint and interposed affirmative defenses of contributory negligence; assumption of risk; and that, if plaintiff suffered any injury or damage, it was caused by her being allergic or hypersensitive to certain ingredients contained in the cleaner which were not harmful to any appreciable number of persons.

The trial court submitted the case to the jury on the issues of implied warranty and negligence, including plaintiff's contributory negligence. A verdict was returned in defendant's favor.

Plaintiff makes 10 assignments of error, four of which relate to the issue of her alleged contributory negligence. She contends that there is insufficient evidence from which the jury could find that she was contributorily negligent.

The record does contain testimony from which the trier of fact could reasonably infer that plaintiff mixed the powdered cleaner with water so as to form a stronger solution than was recommended on the label of the container. Be that as it may, we hold as a matter of law that plaintiff, on the facts before us most favorable to defendant, was not guilty of contributory negligence. That is, there is insufficient evidence to support a finding that plaintiff did not act with ordinary and reasonable care for her own safety under the circumstances. She had purchased a cleansing product packaged in a container which conveyed no warning that, unless used exactly as directed, injury to the skin might result. She had no medical history of skin problems which might have been caused by exposure to household cleansers of this type, many brands of which she had used in the past. She had no knowledge of any facts which would put her on notice that she might be harmed by any of the ingredients contained in the product.

In addition to the complete absence of evidence from which it could be inferred that plaintiff was cognizant of danger to her safety, the container from which she poured assured her "It's Kind To Your Hands." How can it be said that one could be contributorily negligent in immersing her hands into a solution mixed from a container with such words so conspicuously displayed? Such a message would naturally lull the user into a false sense of security. One who has been assured that a product is safe is unlikely to be on the lookout for danger.

Directions and warnings are intended to serve different purposes. The former are designed to assure an *effective* use of the product; a warning, on the other hand, is intended to assure a *safe* use. This distinction has received recognition in other products liability cases. See, 1 Frumer and Friedman, Products Liability § 8.05[1] at 162 (1965), and cases cited therein.

In *Panther Oil & Grease Mfg. Co. v. Segerstrom*, 224 F.2d 216, 218 (9th Cir. 1955), an appeal taken from a federal district court in this state, a pamphlet was supplied to a plaintiff when he purchased the product, which stated:

"Do Not Heat or Thin Battleship. Do not heat Battleship with an open flame. Do not thin it. When either is done, the waterproofing qualities of Battleship are damaged. Hence, a proper job is impossible. . . ."

The plaintiff heated the product over an open flame. An explosion resulted. Answering the defendant's contention that plaintiff was contributorily negligent in failing to heed these instructions, the court said:

[W]e think the instruction [the pamphlet] it contained does not reach the point attempted to be made. It actually says no more than that the heating or thinning of the product will damage its waterproofing qualities. The injunctions both as to heating and thinning are directed toward the mere matter of utility. There is no warning or suggestion that the heating of it would or might pose a hazard of any sort or a consequence other than as stated.

The following cases also stress the importance of an adequate warning when the plaintiff's contributory negligence is put in issue. *Bean v. Ross Mfg. Co.*, 344 S.W.2d 18 (Mo. 1961); *Martin v. Bengue, Inc.*, 25 N.J. 359, 136 A.2d 626 (1957); *Tampa Drug Co. v. Wait*, 103 So.2d 603 (Fla. 1958).

There were no expressions of warning or caution on the label of the container here sold to plaintiff. In fact, it bears repeating, the words "It's Kind To Your Hands" were printed thereon. The mixing instructions were directory only, not imparting notice to plaintiff that deviation therefrom might have injurious consequences. Nor can plaintiff be charged with independent knowledge of potential danger inherent in the ingredients of the product. The defendant produced no evidence that plaintiff had a medical history of irritation from the use of similar household cleansers. Neither did defendant show that plaintiff, a housewife, had sufficient background or experience to charge her with a knowledge or awareness of the irritating qualities which, from the evidence, are associated with certain chemical ingredients contained in the product.

In *Bean, supra,* it is stated at 27, ". . . it is only a failure to exercise due care after a proper warning, or

with other knowledge, that constitutes contributory negligence." Defendant has the burden of proving plaintiff's contributory negligence. He must show by preponderating evidence that the injured party failed to exercise reasonable care for his own safety under the particular circumstances confronting him. *Harmon v. Merrick*, 62 Wn.2d 171, 381 P.2d 614 (1963); *Heinlen v. Martin Miller Orchards, Inc.*, 40 Wn.2d 356, 242 P.2d 1054 (1952). It cannot be gainsaid that, in order for one to contribute to his own injury by negligence, he first must have been aware, or should have been aware, of the danger from which the injury ultimately resulted. One cannot negligently contribute to his own injury when he had no way of reasonably ascertaining that the danger of injury existed.

The record is devoid of evidence that plaintiff was aware, or facts from which it can be said that she should have been aware, of the product's potentially dangerous attributes. Absent such proof, a finding of plaintiff's contributory negligence cannot be made. The trial court erred in submitting this issue to the jury.

Plaintiff assigns error to the trial court's refusal to give an instruction which she proposed on the issue of defendant's alleged breach of the *express warranty*, "It's Kind To Your Hands." RCW 63.04.130 defines an express warranty as follows:

> Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, *and if the buyer purchases the goods relying thereon.* (Italics ours.)

We agree with defendant that the evidence falls short of establishing the essential element of reliance. The trial court correctly refused to give plaintiff's proposed instruction.

In April of 1962, plaintiff purchased a second can of Fuller All Purpose Cleaner from defendant. The contents of this container were proved at trial to be identical to the product which plaintiff used on the occasion of her injury. This

second container, however, bore the following cautionary sticker:

For your added Protection
CAUTION: AVOID CONTACT WITH THE EYES AND PROLONGED CONTACT WITH THE SKIN. In case of accidental contact with eye, flush liberally with water. Contains: Sodium sesquicarbonate, sodium carbonate, tetrasodium pyrophosphate, dodecylbenzene sodium sulfonate. Keep Out Of Reach Of Children.

Over defendant's objection, this container, with the attached sticker, came into evidence. (It should be noted that the propriety of the trial court's ruling admitting this exhibit into evidence is not before us.) Retorting, defendant sought to have one of its Spokane officers testify that the sticker had been attached to the container in order to comply with instructions emanating from defendant's legal department as the result of a federal statute passed in 1960. Plaintiff objected to this testimony on the ground that the witness was testifying upon a question of law. The objection was overruled, and the witness answered. Defendant then had admitted into evidence, without objection, a written "directive" from the "home office" to defendant's Spokane station by which the recipient was instructed to apply the above-mentioned cautionary sticker to a variety of defendant's products. This directive expressly referred to the "Federal Hazardous Substance Labeling Act," and informed the recipient that the application of the cautionary stickers was necessary in order to comply with this "new law." Plaintiff now assigns error to the testimony of the witness. No error was committed. The witness did not testify, nor did he purport to testify, as to the state of the federal "law." He was asked *why* the cautionary sticker was attached to the container. He answered:

The reason we attached the label on there was because we received from our attorney in Hartford instructions to do so, according to the Federal law as passed in 1960 . . . that required this.

This does not constitute opinionated testimony on the law; the witness merely testified as to why, from his own knowl-

edge, the stickers were applied. In any case, this testimony cannot have prejudiced plaintiff. The written directive itself, which referred to the federal statute, was received into evidence without objection.

Plaintiff next assigns error to the giving of instruction No. 8, which follows:

If a product, when used according to directions, is safe for use by the average person, the fact that *a few persons may have an allergy or an unusual susceptibility to that product* and as a consequence suffer some injury upon the use or application of the product, does not impose liability. However, should you find the product, when used according to directions, is harmful to a reasonably foreseeable and *appreciable class or number of potential users,* liability would be imposed.

The words "reasonably foreseeable" and "appreciable class" are used in their usual and ordinarily accepted meanings. (Italics ours.)

Instruction No. 9, to which no exception was taken, stated to the jury:

You are instructed that before you may return a verdict for the plaintiffs, you must find from the preponderance of the evidence that: (1) Fuller All Purpose Cleaner contains a harmful ingredient or ingredients; (2) *Such ingredient or ingredients is harmful to a reasonably foreseeable and appreciable class or number of potential users of the product*; and (3) Eva Jene McCully has been innocently injured in the use of the produce [sic] in the manner and for the purpose intended. (Italics ours.)

Instruction No. 9 is a formula instruction, outlining to the jury the facts which plaintiff must prove in order to recover when confronted with the defense of allergy or hypersensitivity, as declared by this court in *Esborg v. Bailey Drug Co.,* 61 Wn.2d 347, 358, 378 P.2d 298 (1961). On that occasion we said:

On the other hand, it would appear reasonable to require of a plaintiff, seeking to establish a breach of such warranties, when confronted with the defense of allergy or hypersensitivity, that such plaintiff produce substantial evidence which, with the reasonable inferences therefrom, will support findings that: (a) the product involved con-

tains a harmful ingredient; (b) such ingredient is harmful to a reasonably foreseeable and appreciable class or number of potential users of the product; and (c) plaintiff has been innocently injured in the use of the product in the manner and for the purpose intended.

No exception having been taken to instruction No. 9, it has become the law of the case. *Cannon v. Huhndorf*, 67 Wn.2d 778, 409 P.2d 865 (1966).

Plaintiff objects to the trial court's reference in instruction No. 8 to the "few persons" who might have "an allergy or an unusual susceptibility." Contending that there was no evidence that *plaintiff* had such an allergy or susceptibility, she argues that the instruction was erroneously given. We need not decide whether there is sufficient evidence that plaintiff was allergic or hypersensitive. Under instruction No. 9, which has become the law of the case, plaintiff, in order to recover, must prove that the product is "harmful to a reasonably foreseeable and appreciable number of persons." If she is able to carry this burden (along with the other factual requisites set out in instruction No. 9) then she can recover; and her individual "allergy," or "hypersensitivity," or "susceptibility" has no bearing upon this right to recover, under the theory upon which the case was submitted to the jury. No alternative theory was submitted to the jury, nor was one requested.

A careful reading of instruction No. 8 convinces us that it was intended to aid the jury in understanding instruction No. 9. The words "few persons" therein contained are used as the antithesis to the "appreciable class" which is mentioned in both instructions No. 8 and 9. The two phrases are mutually exclusive. But, insofar as instruction No. 8 might have caused the jury to consider that plaintiff's peculiar susceptibilities, if any, had a bearing upon her right to recover, it is confusing, and, therefore, erroneous; since, if she successfully carried the burden placed upon her by instruction No. 9, she can recover, regardless of whether she was allergic or hypersensitive.

We suggest, in the event the case is tried upon the same theory on retrial, that it be more artfully drafted in order

to eliminate any possible ambiguity which might tend to confuse the jury.

Plaintiff makes several other assignments of error. We have considered them, and have decided that they merit no discussion in this opinion.

The judgment is reversed and the cause remanded for new trial.

ROSELLINI, C. J., DONWORTH, HUNTER, and HALE, JJ., concur.