245 So.2d 259 (1971)
Ivy EDWARDS, Appellant,
v.
CALIFORNIA CHEMICAL COMPANY, a Delaware Corporation, and Hector Supply CO., a Florida Corporation, Appellees.
No. 69-695.
District Court of Appeal of Florida, Fourth District.
February 19, 1971.
Rehearing Denied March 25, 1971.
*260 Maurice Fixel of Meyer, Leben, Fixel & Gaines, Hollywood, for appellant.
Michael D. Sikes of Sherouse, Corlett. Merritt, Killian & Okell, Miami, for appellee-California Chemical.
Thomas J. Schulte and David L. Willing of Dean, Adams, George & Wood, Miami, for appellee-Hector Supply Co.
WALDEN, Judge.
This negligence case was terminated in the trial court by entry of summary judgment against the plaintiff. He appeals We reverse because of the existence of genuine issues of material fact that preclude summary disposition.[1]
A summary judgment review of the record[2] reveals that plaintiff, an illiterate, labored at the Boca Raton Hotel and Country Club taking care of the golf course grounds. He became ill from arsenic poisoning following use of Ortho Standard Lead Arsenate. This product was manufactured by the defendant, California Chemical Co., and was sold and distributed by the defendant, Hector Supply Co.
Lead arsenate is highly toxic. It can be absorbed into the body by inhalation, contact with unbroken skin and digestion. To safely use the product the user must wear protective clothing and employ a respirator.
The gravamen of plaintiff's complaint and the crux of this appeal centers upon the defendant's failure to warn the plaintiff of the necessity for a user to employ a respirator and protective rubber or neoprene clothing. More particularly, we must decide if the warning contained upon the product's label was a sufficient warning as a matter of law so as to entitle defendants to summary judgment.
On one side of the bag containing the lead arsenate were printed lengthy and *261 specific instructions for use as an insecticide as concerns its application to various agricultural crops including that of lawns and golf greens, as follows:

*262 The product was labeled on the other side, as concerns its warning of danger, as follows:

*263 As can be seen  this without dispute  there was no warning or indication upon the label that a respirator and protective clothing were required for safe use.
It is clear that manufacturers and sellers of inherently dangerous products have a duty to give users a fair and adequate warning of its dangerous potentialities.[3] And clearly plaintiff was within a class who would foreseeably use the product and be harmed in the absence of adequate warning.
Turning to the warning label and the question of its adequacy, we believe that the outcome of this appeal is controlled by the cases of Tampa Drug Co. v. Wait, supra, note 3, and Williams v. Caterpillar Tractor Co.,[4] where the adequacy of a label warning was deemed to be a question of fact properly to be decided by the jury.
In the Wait case, it was contended that the trial court should have decided that a warning label upon a container of carbon tetrachloride was a sufficient warning as a matter of law. The Supreme Court of Florida held that the adequacy of the warning was a jury question and stated:
"The measure of the duty of the distributor of an inherently dangerous commodity is now well established to be the reasonable foreseeability of injury that might result from the use of the commodity. The care exercised in fulfilling this duty is in turn measured by the dangerous potentialities of the commodity as well as the foreseeable uses to which it might be put. When a distributor of an inherently dangerous commodity places it in the channels of trade, then by the very nature of his business he assumes the duty of conveying to those who might use the product a fair and adequate warning of its dangerous potentialities to the end that the user by the exercise of reasonable care on his own part shall have a fair and adequate notice of the possible consequences of use or even misuse."
* * * * * *
"This duty simply is to take reasonable precautions to supply users with an adequate warning notice that would place *264 them on their guard against the harmful consequences that might result from use of the commodity."
* * * * * *
"The drug company was therefore thoroughly familiar with the uses to which the commodity might be put. With this knowledge the appellant, which had been in business for many years, through its officers and agents certainly must have realized that the chemical would be used for the purpose for which it was employed by Mr. Wait. We think that with this knowledge the appellant was charged with the burden of forewarning potential users of the inherently dangerous nature of the commodity."
* * * * * *
"Implicit in the duty to warn is the duty to warn with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential danger. It is the failure to exercise such a degree of caution after proper warning that constitutes contributory negligence in a case such as this." (Emphasis supplied.)
The Williams case was based, among other things, upon the theory that the manufacturer was negligent in failing to adequately warn concerning the danger of an inherently dangerous mechanism, a hydraulic tread adjuster. The warning in issue there stated:
"WARNING: High pressure cylinder. Do not open vent valve more than 1/2 turn or remove fitting until pressure is relieved."
The trial court entered summary judgment for the defendant, manufacturer. The appellate court reversed and remanded the case for trial, saying:
"An apparent question of fact remaining unresolved by the depositions is whether or not the warning sign was adequate to warn of the potential danger inherent in the mechanism. See Tampa Drug Co. v. Wait, Fla. 1958, 103 So.2d 603, 75 A.L.R.2d 765. In other words, was the degree of warning commensurately proportionate to the potential danger of which the manufacturer was aware, or, in the exercise of reasonable care, should have been aware?" (Emphasis supplied.)
In the instant case the labelings present an anomalous situation when viewed by a potential user. He is told how to use it as an insecticide but he is not told how to use it with safety.
On one side of the container the label tells him that the product may be used as an insecticide. He is furnished with a careful catalog of twenty-three insects that are controllable by the product. Ten crops are itemized as being amenable to treatment. He is given the exact proportion of arsenate and water that must be blended depending upon the particular insect to be eradicated. He is told with exactness at what stage of growth applications are to be made, depending upon the crop. Additives are prescribed in certain circumstances. He is told the amount of the product to be applied to a given area. He is given the amount of arsenate to be employed per 1000 square feet to be used for certain insects. He is instructed in detail as to how to mix, maintain in suspension, and spray the mixture. In sum, he is told with extreme particularity how, where, when and for what purpose to use the product as an insecticide.
On the other hand and side, we have the label warning of danger. It is red, and reflects a skull and cross-bones together with a large word, "Poison." The exact label is set forth above. Primarily it admonishes that the product is not to be inhaled, touched to the skin or taken internally. There is a total failure or omission of the defendants to tell or instruct the user as to how the product may be safely used. It does not prescribe, as earlier noted, that a respirator and protective clothing must be used.
*265 As a matter of reason and everyday common sense the jury would be authorized, in light of these two labels, to believe that it would be difficult if not impossible, for a user to use the product in the fashions detailed by defendants without in some measure inhaling, touching or ingesting some of the product.
In light of the specific instructions in one area and the failure in the other and more important area to prescribe protective clothing and a respirator and to tell the user how to safely use the product, the jury would be warranted in believing that the label warning was inadequate. It could be inferred from the omission that the product was not sufficiently dangerous and virulent to require protective devices or else the label would have so stated and warned. In other words, the jury could determine that the duty to warn under these circumstances could only be fulfilled by putting the user on specific notice as to how the product might be safely used, in addition to its advices as to how it might be efficiently used.
From our survey we feel that only a jury could determine if plaintiff had been fairly and adequately warned. It would have to decide in the language of the Wait case, supra, if the defendants here fulfilled their duty to warn "* * * with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential danger." And in the language of the Williams case, supra, "* * * was the degree of warning commensurately proportionate to the potential danger * * *?"
Having considered the complete appellate treatment and discussed the matters that we deem deserving, we reverse and remand for further proceedings consistent herewith.
Reversed and remanded.
REED, J., and WILLIAMS, ROBERT L., Associate Judge, concur.
NOTES
[1] Fla.R.Civ.Proc. 1.510(c), 31 F.S.A.
[2] See 30 Fla.Jur., Summary Judgment, § 22.
[3] 76 A.L.R.2d 16; Tampa Drug Co. v. Wait, Fla. 1958, 103 So.2d 603.
[4] Tampa Drug Co. v. Wait, Fla. 1958, 103 So.2d 603; Williams v. Caterpillar Tractor Co., Fla.App. 1963, 149 So.2d 898.