667 P.2d 750

Sue N. BROWN, Personal Representative of the Estate of Mark McCormick Brown, deceased, Plaintiff-Appellant,

v.

SEARS, ROEBUCK & COMPANY, a New York corporation; The Singer Company, a Delaware corporation; and Coleman Cable and Wire Company, a Delaware corporation, Defendants-Appellees.

No. 1 CA–CIV 5439.

Court of Appeals of Arizona, Division 1, Department A.

March 8, 1983.

Rehearing Denied April 19, 1983.

Review Denied June 14, 1983.

---

Richard D. Coffinger, Glendale, for plaintiff-appellant.

Weyl, Guyer, MacBan & Olson by Thomas G. Bakker, Phoenix, for defendant-appellee Coleman Cable and Wire Co.

Wentworth & Lundin by Charles W. Herf, William J. Reckling, III, Phoenix, for defendants-appellees Sears, Roebuck & Co. and The Singer Co.

## OPINION

CORCORAN, Judge.

This is a wrongful death action in the nature of a product liability claim. Appellant, Sue N. Brown, filed a complaint pursuant to A.R.S. § 12–612 relating to the death of her late husband, Mark McCormick Brown (Decedent), naming three defendants: Sears, Roebuck & Company (Sears), The Singer Company (Singer), and Coleman Cable and Wire Company (Coleman Cable). The trial court granted summary judgment in favor of all defendants and appellant here challenges the propriety of that judgment.

█ In determining the propriety of a summary judgment granted in favor of defendants-appellees, the evidence and inferences drawn therefrom must be viewed in a light most favorable to the party opposing the motion. *Boyle v. City of Phoenix,* 115 Ariz. 106, 563 P.2d 905 (1977). The facts and reasonable inferences are stated in a light most favorable to appellant.

On July 4, 1974, the Decedent died suddenly and unexpectedly in the back yard of his residence while he was operating a Craftsman portable electric circular saw (saw) to cut large tree limbs into smaller pieces of firewood. The saw, which had been purchased by Decedent's son in early 1970, was manufactured by Singer and was sold by Sears.

At the time of Decedent's death, the saw was connected to an electrical outlet on the exterior of the Brown residence by two extension cords. One of these extension cords was a three-pronged grounded cord manufactured by Coleman Cable (cord). Inspection of the cord revealed the presence of several cuts in the insulated casing with frayed conductors exposed. Repairs had been attempted by covering the cuts with tape. The other extension cord was a two-pronged ungrounded cord.

The Decedent's body suffered a large electrical burn to the left midabdomen and a small electrical burn on the dorsum of the right hand. He fell on top of the saw which continued to run with the spring guard covering the rotating blade. Appellant discovered the Decedent lying face down with his body contacting the saw as it continued to run.

Thomas B. Jarvis, M.D., Maricopa County Deputy Medical Examiner, performed a postmortem examination. He concluded that death was caused by electrocution. It was Dr. Jarvis' opinion that each of the burns on Decedent were electrical burns rather than thermal burns. He opined that electrical current was introduced through the burn on the Decedent's midabdomen which would likely have produced a malfunction of the heart.

Appellant filed a complaint wherein she alleged that the decedent's death by electrocution was caused by both the Coleman Cable extension cord and the Singer-Sears saw, which she claimed were defective and unreasonably dangerous on the date of the accident. The trial court entered summary judgment against appellant and in favor of Coleman Cable, Singer and Sears. On appeal, appellant urges this court to reverse the summary judgment entered against her on her claims for strict tort liability.

Inasmuch as the appellees challenge appellant's standing to bring this appeal, we will discuss the standing question raised before proceeding with the substantive issues before us.

## STANDING

The standing question raised by the appellees quickly resolves itself when A.R.S.

§ 12–612, Arizona's Wrongful Death Act, is read in relation to the formal written order entered by the trial court granting appellant's motion to amend the complaint.

Appellant, the Decedent's surviving spouse, originally filed her complaint in her own name for and on behalf of herself and the Decedent's two children. She later made a motion to amend this complaint which was granted. The trial court entered an order amending her complaint as follows:

> The second sentence of Count I, Paragraph I, is deleted and replaced with the following sentence: *"Plaintiff brings this action* pursuant to A.R.S. § 12–611 *in her capacity as personal representative for the Estate of Mark McCormick Brown, deceased,* in Case No. P–112422 in the Superior Court of the State of Arizona in and for Maricopa County, *on behalf of the surviving spouse and children of the decedent."*

(Emphasis added.)

A.R.S. § 12–612(A) provides:

> *An action for wrongful death shall be brought by and in the name* of the surviving husband or wife or *personal representative of the deceased person for and on behalf of the surviving* husband or *wife, children* or parents, or if none of these survive, on behalf of the decedent's estate.

(Emphasis added.)

■ Appellees object to the language in the order amending the complaint, indicating that appellant appears "in her capacity as personal representative *for the estate of Mark McCormick Brown, deceased."* None of the parties to this appeal has cited subsection D of A.R.S. § 12–612, which provides:

> The term "personal representative" as used in this section shall include any person to whom letters testamentary or of administration are granted by competent authority under the laws of this or any other state. The action for wrongful death may be maintained by any such personal representative without issuance of further letters, or other requirement or authorization of law.

Obviously, if a personal representative is appointed by the superior court, the personal representative can appear as such representing the estate. Even assuming there were error, the language referring to the estate is surplusage which does not affect the substantial rights of the parties.

## LIABILITY OF COLEMAN CABLE

■ In *O.S. Stapley Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968), our Supreme Court adopted the doctrine of strict products liability set forth in Restatement (Second) of Torts § 402A (1965) which provides in relevant part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> . . . .

Strict liability, however, cannot be equated with absolute liability. *Morrow v. Trailmobile, Inc.,* 12 Ariz.App. 578, 473 P.2d 780 (1970). Before liability can be fixed, the plaintiff is required to prove that the product was defective, that the defect was unreasonably dangerous, and that plaintiff's injuries were proximately caused by the defect. *Vineyard v. Empire Machinery Co.,* 119 Ariz. 502, 581 P.2d 1152 (App.1978). The plaintiff bears the burden of proving that the defect existed at the time that the product left the manufacturer. *Byrns v. Riddell,* 113 Ariz. 264, 550 P.2d 1065 (1976); *Sullivan v. Green Manufacturing Co.,* 118 Ariz. 181, 575 P.2d 811 (App.1977). Applying these general principles to the facts before us, we find that the summary judgment entered in favor of Coleman Cable must be affirmed.

On the date of the accident, Harold D. Hayes, a City of Phoenix traffic signal technician, was called to the Brown residence to test the saw and cord. He tested the saw to see if the case of the saw was energized but found no fault and no indication of malfunction or electrical short in either the saw or the extension cord. Mr. Hayes then demonstrated the lack of a short or fault by turning on the electric saw and holding it in his hands. It functioned normally and Mr. Hayes felt no passage of current from the saw or the extension cord. He also put the saw in one hand and put his other hand on the damp ground where the decedent was standing to see if there was any conduction of electricity and, although this was a dangerous thing to do if there was any short in the system at that time, he felt no effects.

Appellant retained the services of Paul Young, an electrical engineer, to examine the saw. He found no electrical malfunction in the saw. He also examined Coleman Cable's yellow grounded extension cord. Mr. Young testified that the cord was taped, meaning that someone had physically damaged the cord and applied tape thereto in an effort to repair it. Mr. Young had never seen a new cord sold in this condition. He also testified that the female plug at the end of the cord was not the original plug that had been put on by the manufacturer. In his opinion both of these alterations to the cord had occurred after it was manufactured.

Mr. Young checked the cord for continuity and found that each of the three wires was continuous within the cord. No wire within the cord was shorted to another wire and the polarity of the wires was maintained throughout the length of the cord. All of his continuity and resistance checks, wire to wire, showed that they were safe for the function for which they were originally manufactured.

Appellant submitted the cord and the saw to another electrical engineer, W.D. Pennycook. He examined the saw and the cord and found, as had Mr. Young and Mr. Hayes, that the cord had normal continuity. He found no anomalies present in the cord or the saw that were present at the time it left the manufacturer. However, he observed that when the tape was removed from the cord there was evidence of arcing on one of the wires; one of the small strands was beaded. Mr. Pennycook found that it was *possible* for a short to occur. Although he found no short in the cord when he examined it, he did opine that if the cord were flexed the frayed conductors could contact each other, momentarily causing a transient or intermittent short circuit which could result in a fatal shock. This is one kind of accident that grounding was designed to avoid which was defeated by the use of the two-pronged ungrounded cord.

In Mr. Pennycook's opinion, these cuts were the result of someone's using the extension cord *after* it was purchased. He had no reason to believe that the cuts in the cord were the result of Coleman Cable's conduct prior to its sale.

Appellant has failed to produce any evidence that the Coleman Cable extension cord was defective when sold. Her experts performed a variety of tests on the cord, but did not discover any faults or shorts to be present other than the cuts. Appellant's theory of liability depends upon the existence of cuts in the insulation on the cord which were taped over. Had these cuts not been present in the cord, there would have been no electrocution.

We find that appellant has failed to come forward with evidence to establish the basic elements of her case against Coleman Cable on the basis of strict tort liability principles. In order to defeat a motion for summary judgment the opposing party must show that evidence is available that would justify a trial. *W.J. Kroeger Co. v. Travelers Indemnity Co.*, 112 Ariz. 285, 541 P.2d 385 (1975). This appellant has failed to do.

Appellant also contends that the extension cord was defective by virtue of Coleman Cable's failure to warn the decedent concerning the use of the cord when it was damaged or improperly repaired. We

**562**

find no support for her argument on the facts before us.

■ The rule stated in § 402A of the Restatement (Second) of Torts is held to apply only when the product is in a condition not contemplated by the ultimate consumer, and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community *as to its characteristics.* *See* comments g and i to § 402A. Thus, a product containing an obvious hazard is generally considered neither defective nor unreasonably dangerous and therefore there is no duty to warn of such dangers. W. Kimble and R. Lesher, *Products Liability* § 196 at 205 (1979). Here, the manufactured item is a simple thing of universally known characteristics, not a device with unseen parts or mechanism. *See Jamieson v. Woodward & Lothrop,* 247 F.2d 23, 28 (D.C.Cir.), *cert. denied,* 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957). Surely every adult knows that if an electrical extension cord is cut or frayed a danger of electrical shock is created. We find that reasonable minds could not differ as to the obviousness of this danger. Because the danger was so obvious, we rule as a matter of law that Coleman Cable had no duty to warn of the danger of electrical shock.

## LIABILITY OF SINGER AND SEARS

The Arizona courts have recognized that allegations of defective conditions within the ambit of the products liability theory arise in three distinct situations: (1) Manufacturing defects, (2) design defects, and (3) warning or instruction defects; that is, failure to adequately warn or instruct in the use of the product. *Hohlenkamp v. Rheem Manufacturing Co.,* 123 Ariz. 535, 601 P.2d 298 (App.1979).

In this case, appellant's claims against Singer and Sears are based on alleged design defects with respect to the saw and allegations that Singer and Sears failed to provide adequate instructions and warnings concerning the operation of the saw, which rendered the saw defective and unreasonably dangerous to the decedent.

### Design Defect

■ It is not the intention of rule 56, Rules of Civil Procedure, to grant a trial on the merits where there is no genuine fact issue or where a claim may be frivolous. *Hackin v. Rupp,* 9 Ariz.App. 354, 452 P.2d 519 (1969). Nevertheless, if there is the slightest doubt as to whether a factual issue remains in dispute, the granting of summary judgment is erroneous and the doubt must be resolved in favor of a trial on the merits. Even if there is no factual dispute, summary judgment is unwarranted where possible inferences that can be drawn from the circumstances are conflicting. *Morelos v. Morelos,* 129 Ariz. 354, 631 P.2d 136 (App. 1981). We find that the trial court erred in granting summary judgment in favor of Sears and Singer on the design defect issue.

Dr. Truet B. Thompson, professor of electrical engineering at Arizona State University, was employed by appellant as an expert witness in the field of electrical engineering. In his deposition, he testified that the saw was defective, as follows:

> The failure in this electrical saw is that it provided a hot circuit which Mr. Brown came in contact with. It is not the fact that some aspect of this particular unit failed and the insulation failed, the wire broke or something of that kind. But it is the fact that the saw *in itself was inherently dangerous* in that it provided a connection directly to the mass, the body of the saw, which Mr. Brown could hold on to and which was easily energized.

(Emphasis added.) The affidavit of Dr. Thompson, which was attached to appellant's response to Sears and Singer's motion for summary judgment sets forth a detailed basis for his opinion that the saw was in a defective condition unreasonably dangerous at the time it was sold. While Dr. Thompson does not specifically use the term "design defect" in his statement, the conclusion drawn from the affidavit is that the saw was defectively designed by using a

"grounded" system as opposed to a "double-insulated" system.

Dr. Thompson's opinion as to the saw's design is competent. He is qualified to give this opinion because of his educational background in electrical engineering and because of his careful study of the literature on "grounded" versus "double-insulated" power tools. *See Board of Regents v. Cannon,* 86 Ariz. 176, 342 P.2d 207 (1959); *Gaston v. Hunter,* 121 Ariz. 33, 588 P.2d 326 (App.1978).

The fact that an alternate safety feature may be available does not in and of itself render a product, which has adopted a different type of safety device, defective and unreasonably dangerous. *See e.g. Rogers v. Unimac Co.,* 115 Ariz. 304, 565 P.2d 181 (1977). However, this court does not make the ultimate determination of the defectiveness or nondefectiveness of the saw's design. The trier of fact does. Our review of the record is limited to deciding whether an issue of fact exists as to the saw's design. We find that summary judgment was inappropriate in light of Dr. Thompson's deposition and supporting affidavit.

### Failure to Warn

The focal point of appellant's appeal as to Sears and Singer is whether there is a genuine issue of fact that the saw was unreasonably dangerous without a warning that if it was operated with a non-grounded two-prong extension cord there was a substantial risk of electrocution.

Under § 402A of the Restatement (Second) of Torts, products though faultlessly made may nevertheless be deemed "defective" if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning. *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 581 P.2d 271 (App.1978); *Embry v. General Motors Corp.,* 115 Ariz. 433, 565 P.2d 1294 (App. 1977); comment j, § 402A. Where a warning is required, the warning must be reasonably readable and apprise a consumer exercising reasonable care under the circumstances of the existence and seriousness of the danger sufficient to enable the consumer to protect himself against it. *See Hubbard-Hall Chemical Co. v. Silverman,* 340 F.2d 402 (1st Cir.1965). Thus, an inadequate warning may be equal to no warning at all. *Sadler v. Lynch,* 192 Va. 344, 64 S.E.2d 664 (1951); W. Kimble and R. Lesher, *Products Liability,* § 204 at 220 (1979). This determination of whether a warning is adequate to apprise foreseeable users of dangers in the product is ordinarily a question of fact. *Shell Oil Co. v. Gutierrez, supra; Anderson v. Klix Chemical Co.,* 256 Or. 199, 472 P.2d 806 (1970); *Bine v. Sterling Drug, Inc.,* 422 S.W.2d 623 (Mo.1968).

We now turn to the specific warnings and instructions given with the saw at the time of purchase: A red tag labeled "CAUTION —U.S.A. USERS" was placed in the saw's carton, along with the saw's instruction booklet. The color red presumably was used to warn of danger or caution the user. That tag states:

> This tool is equipped with an Underwriters Laboratories required and approved 3 prong plug for your safety. The larger prong in this plug is connected through the power cable to the tool housing. When the plug is inserted in a properly grounded receptacle, it will protect the user from shock should the tool insulation for any reason fail.

> If you use an extension cord with this tool, it should also be 3 wire. Since many receptacles in present construction will not have provision for 3 prong plugs, an adapter is included with this tool. Make sure the grounding lead on the adapter is firmly attached to a grounded receptacle box as shown in illustration, before attempting to operate the tool.

In summary, the red tag "required" that a three-pronged grounded cord be used for "your safety" to "protect the user from shock."

The saw's instruction booklet contained the following information listed under the section titled "Customer Do's and Don'ts."

. . . .

3. DO be sure tool is properly grounded especially if you are on damp floor or ground (See "Grounding"). If it is necessary to work in a wet or damp location, protect yourself further against possible shock by wearing rubber gloves and rubber footwear.

. . . .

(Page 4.) The section on grounding which the consumer is referred to is contained in a highlighted box entitled "CAUTION" and depicts the proper grounding procedure for the saw. This section states:

GROUNDING—This tool is equipped with an Underwriters' Laboratories approved 3 prong plug for your safety. If your outlet is a grounded 3-cavity type, your tool will be grounded automatically. Since many receptacle boxes in present construction will not have 3-cavity receptacles, an adapter is packed with this tool. Make sure grounding lead is firmly attached to a grounded receptacle box as shown above, before attempting to operate tool. Extension cords should also be three-wire.

(Page 4.) Customer "Don'ts" include the following admonitions:

6. DON'T use a 2-wire extension cord.

. . . .

8. DON'T use extension cord of improper wire size. (See "Extension Cords")

(Page 4.) The section on extension cords to which the consumer is referred states:

EXTENSION CORDS—The use of any Extension Cord will cause some loss of power. To keep this to a minimum and to prevent overheating and motor burnout, use the table below to determine the MINIMUM wire size (A.W.G.) Extension Cord. Cords should be 3-wire grounded.

| Extension Cord Length | Wire Size A.W.G. |
| --- | --- |
| 25– 50 Feet | 14 |
| 50– 75 Feet | 12 |
| 75–100 Feet | 10 |
| 100–200 Feet | 8 |

We have reviewed these materials and find that a genuine question of material fact exists as to the adequacy of these instructions.

A distinction must be drawn between instructions (directions) for use and warnings. Instructions are to be followed to secure the most efficient or satisfactory use of the product; warnings are instructions as to *dangers* that might occur if the instructions are not followed. *See Panther Oil & Grease Mfg. Co. v. Segerstrom*, 224 F.2d 216 (9th Cir.1955); *Edwards v. California Chemical Co.*, 245 So.2d 259 (Fla.App. 1971); *McCully v. Fuller Brush Co.*, 68 Wash.2d 675, 415 P.2d 7 (1966); *Bean v. Ross Mfg. Co.*, 344 S.W.2d 18 (Mo.1961). In this regard, we find the following to be a correct statement of the law.

Even though a product may be accompanied by complete and adequate directions for its proper use, and even though the product is safe if such directions are followed, if there are dangers that are not obvious that may arise if the directions are not followed, the manufacturer may be held liable for failing to warn of such dangers. Determination of liability in those cases would seem to turn on the question of whether it was reasonably foreseeable that the user would fail to read the directions or fail to follow them, in the absence of a warning as to the consequences of such misuse.

W. Kimble and R. Lesher, *Products Liability* § 199 at 210–11 (1979); *See Casetta v. United States Rubber Co.*, 260 Cal.App.2d 792, 67 Cal.Rptr. 645 (1968), and *McLaughlin v. Mine Safety Appliances Co.*, 11 N.Y.2d 62, 226 N.Y.S.2d 407, 181 N.E.2d 430 (1962). Thus, providing instructions for the safe use of the product is not a functional equivalent or appropriate substitute for adequate warnings of dangers that might be encountered if the instructions given are not followed. Bland instructions which if followed would involve no risk are no substitute for a skull and crossbones warning where the misuse of the product will have lethal results.

The importance of this distinction is exemplified by the facts before us. The instruction booklet lists various "Don'ts" for the correct operation of the saw. No. 6 says "DON'T use a two wire extension cord" while No. 8 says "DON'T use [an] extension cord of improper wire size (See

'Extension Cords')." There is no DON'T regarding the use of cut, frayed or damaged extension cords. DON'T No. 8 points out that a long or undersize extension cord may cause overheating or motor burnout. Neither DON'T No. 6 nor any other provision warns that use of a two-wire extension cord could have a lethal effect. The real danger which should be warned against is potential electrocution. The instructions contain no such warning.

■ We cannot say, as a matter of law, that the red tab in the saw carton and the instruction booklet provided with the saw cautioning of the danger of "shock" was of a degree of intensity that would have caused the Decedent to exercise for his own safety caution commensurate with the potential danger of death. *See Tampa Drug Co. v. Wait,* 103 So.2d 603 (Fla.1958).

*Misuse*

■ Sears and Singer raise as an absolute defense the decedent's misuse of the saw by using a non-grounded extension cord. The defense of misuse is an accepted defense in Arizona. It has been defined as a use of a product "for certain purposes or in a manner not reasonably foreseen by the manufacturer." *O.S. Stapley Co. v. Miller,* 103 Ariz. at 561, 447 P.2d at 253. However, some abnormal or unintended uses will not constitute a legal misuse of the product if they are reasonably foreseeable. This is ordinarily a question of fact for the jury, unless reasonable minds could not differ. *Kavanaugh v. Kavanaugh,* 131 Ariz. 344, 641 P.2d 258 (App.1981).

■ In the present case appellant's expert witness, Dr. Truet Thompson, testified as to engineering reports discussing the disadvantages of using a "grounded" system as opposed to a "double-insulated" system. He discussed a report that indicated that people were either using a conversion plug or were simply breaking off the third grounded plug, and thus were defeating the safety provided by grounding. On the basis of the record, we find that reasonable minds could differ as to whether the use of a non-grounded extension cord was an unforeseeable misuse.

The summary judgment granted in favor of Coleman Cable is affirmed. The summary judgment granted in favor of Sears and Singer is reversed.

OGG, J., concurs.

FROEB, Judge, concurring in part; dissenting in part:

I concur with the majority decision affirming the trial court judgment as to appellee Coleman Cable and Wire Company. I respectfully disagree that the trial court erred in its judgment in favor of Sears, Roebuck & Company and The Singer Company. I would affirm the entire judgment.

Appellant's decedent used the electric saw with a non-grounded two-prong extension cord contrary to express instructions and warnings furnished by Sears and Singer. In my opinion, the warnings and instructions made it unmistakably clear what the consequence could be if the saw were used with a two-prong extension cord. A skull and crossbones was not required. I would hold that the warnings were sufficient as a matter of law.

Since it is clear that the saw would not have been energized with an electric current if a grounded extension cord had been used, the saw was not unreasonably dangerous as a matter of law, regardless of whether there was an alternate design available.

Moreover, the extension cord was used with a taped-over cut in the wire which apparently led to the fatal short circuit. Misuse of a product is a defense to recovery under the theory of strict liability. *Restatement (Second) of Torts* § 402A, comment g. In my opinion, Sears and Singer are not required to foresee that a user will disregard all warnings and instructions and use a non-grounded extension cord. For this reason, I would hold that there is no triable fact question relating to misuse and the defense applies as a matter of law.

I would affirm the judgment.