Preston PAUL, Plaintiff—Appellee,

v.

ASTEC INDUSTRIES, INC.,
Defendant—Appellant.

No. 00–15732.

D.C. CV–97–00024–FRZ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 12, 2001.

Decided Jan. 14, 2002.

**624**

Before PREGERSON, RAWLINSON, Circuit Judges, and WEINER, District Judge.[1]

## MEMORANDUM [2]

Astec Industries, Inc. appeals the district court's $562,500 judgment after a jury trial in favor of Preston Paul in Paul's diversity action seeking relief under Arizona products liability law. Paul's left arm was injured when he reached into the rotating tail pulley of a power conveyor belt manufactured by Astec. The belt was part of a soil remediation plant used by Paul's employer, Southwest Soil Remediation (SSR). The district court had jurisdiction pursuant to 28 U.S.C. § 1332; this court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

■ The facts are well known to the parties and will be repeated here only as is necessary to explain our holding. Astec first argues that the district court commit-

ted reversible error by failing to include in its products liability design defect charge to the jury that "there is no duty to warn of an obvious and known hazard." The jury charge given by the district court was taken nearly verbatim from the Revised Arizona Jury Instructions (Civil) 3rd Edition. The basis for the rejected proposed instruction was language in the decision of *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 667 P.2d 750 (Ariz.Ct.App.1983) that "a product containing an obvious hazard is generally considered neither defective nor unreasonably dangerous and therefore there is no duty to warn of such dangers." *Id.* at 562, 667 P.2d 750. The product involved in *Brown* was a household extension cord.

The *Brown* case arguably changed the law of Arizona to make obviousness a factor where the "item is a simple thing of universally known characteristics" and "reasonable minds could not differ as to the obviousness of the danger." *Id.;* accord *Raschke v. Carrier Corp.*, 146 Ariz. 9, 12, 703 P.2d 556 (Ariz.Ct.App.1985) ("Although a gas furnace is a more complicated product than an extension cord, surely every adult knows that adequate ventilation is necessary for its proper operation."). The record here, however, does not disclose an abuse of discretion on the part of the district court for failing to give the proffered instruction.

The soil remediation plant which caused Paul's injury was not a simple thing, such as an electrical cord or even a furnace vent. The part of the plant which injured the plaintiff was a conveyor system used to move soil into a combustion chamber. It was a piece of industrial machinery and had numerous moving parts which the

1. Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

plaintiff was charged with greasing and cleaning. Although Astec put forth evidence to show the obviousness of the danger, so too was there evidence that the danger would not be appreciated by the ordinary user. Paul admitted that he appreciated the danger if he put his hand directly into the tail pulley, but that he did know he could be injured by having the cuff of his glove get caught in the conveyor and drive his arm into the tail pulley. Indeed, Paul's theory of liability was not the failure to warn that reaching into the tail pulley was dangerous, an arguably obvious condition, but rather the failure to warn that loose clothing could be caught by the conveyor and impel a limb into the tail pulley.

Considering all the facts presented at trial, the district court's charge, viewed in its entirety, fairly and adequately covered the issues presented, correctly stated the law, and was not misleading.

■ Astec next argues the district court erred in admitting the testimony of Paul's expert, Robert Harner. In an offer of proof outside the hearing of the jury, Harner identified himself as a safety engineer with a degree in industrial technology—rather than an engineering degree—because when he attended college there was no such thing as a degree in safety engineering. Harner testified that the standard applicable to designing conveyor equipment was the American National Standard Institute Standard B20.1, which was drafted by the American Society of Mechanical Engineers. The standard provides that "all exposed moving machinery parts that present a hazard to personnel at work stations or operator stations shall be mechanically or electrically guarded." Harner opined that an interlock should have been installed which would have prevented the conveyor from moving when it was being cleaned. He also testified that a guard was mandatory. He concluded

that it was reasonably foreseeable that someone would be in close proximity to the nip point which caught Paul's glove; that Astec could have placed a guard over the tail pulley similar to other guards on the machine at a cost of approximately $300; and that it was reasonably foreseeable that the plant would have to run continuously to comply with environmental testing.

Astec argues that the district court erred in allowing Harner to testify that the design of the Astec plant was defective because he was not qualified to offer such an opinion, and that the opinion was subjective and speculative. Astec focuses upon Harner's lack of an engineering degree, or other knowledge, skill or experience that would qualify him to testify on engineering issues. This argument both misstates Harner's qualifications as well as the subject of his testimony.

The opinions Harner offered were properly within the field of his expertise, industrial safety. He never testified how a guard should be designed, only that a guard was required and the absence of a guard violated the safety standard. Astec makes no argument that Harner was not qualified to offer an opinion on industrial safety.

■ Harner's methodology was to inspect the machine and apply the ANSI provisions, which were drafted by the American Society of Mechanical Engineers, to his observations. While Astec argues his methodology was to get information from counsel's paralegal and draft an opinion without reviewing the evidence or speaking with the plaintiff, these points go to the weight of Harner's testimony before the factfinder and not its admissibility.

■ Astec next argues the district court erred in admitting evidence from Harner, as well as two Astec employees, on the subject of whether Astec trained SSR personnel on the operation of the machine.

Astec argues this evidence was only relevant to a negligence claim, which Paul dismissed prior to trial, and was irrelevant to Astec's liability on the product liability claim. Again, we find this argument has no merit.

First, the evidence regarding whether Astec provided training was de minimis compared to the testimony regarding the design defect. Second, the evidence was relevant to discount any negligence of SSR, a non-party, to whom the jury assigned 75% liability for the accident. Third, the failure to train could have been relevant to the issue of whether a warning label was required, since it tended to show it more likely than not that a user of the machine would not appreciate the danger. Accordingly, it appears clear that the probative value of the evidence outweighed its possible prejudice and the district court's decision to admit the evidence was not an abuse of discretion.

 Finally, Astec argues the jury verdict of $3,750,000.00, of which $562,500.00 was assigned to it, is excessive. "We may reverse a jury's finding of the amount of damages if the amount is grossly excessive or monstrous." *Lambert v. Ackerley,* 180 F.3d 997, 1011 (9th Cir. 1999); *Los Angeles Mem'l Coliseum Comm'n v. NFL,* 791 F.2d 1356, 1360 (9th Cir.1986). We find that the amount of the damages awarded by the jury was not grossly excessive.[3]

Paul presented expert economic testimony that his past medical expenses were $218,250.00, his expected future medical expenses would approximate $900,000.00, and his past and future wage loss was $439,421.00, totaling $1,157,671.00. He also put on evidence of the substantial

nature of his injury, the amputation of his left arm. The total verdict, $3,750,000.00, was approximately 3.25 times his special damages, a multiplier that is not so high as to shock the conscience of the court. Finally, Paul will recover only 15% of the total verdict, since the jury found him to be 10% liable and assessed the lion's share of the fault, 75%, to Paul's employer who is shielded from liability by the worker's compensation bar. The total verdict and the amount assessed against Astec, is clearly within the range of possible verdicts considering the economic damage evidence Paul adduced at trial.

AFFIRMED.

---

**3.** Paul argues that the issue was not properly preserved by Astec since it failed to file a Rule 59 motion in the district court. However, we have also recognized that making a Rule 50 motion "preserves the ability to challenge the sufficiency of evidence on appeal." As Astec unquestionably made a Rule 50 motion, both at the close of the plaintiff's case and at the end of all the evidence, Paul's argument that the issue was waived has no merit.